E-FILED; Baltimore County Circuit Court
Docket: 12/23/2024 1:54 PM; Submission: 12/23/2024 1:54 PM
Envelope: 19297345

| | | |
|---|---|---|
| Sharon Borowiec<br>101 Center Place, Apt. 309<br>Dundalk, MD 21222 | * | IN THE |
| | * | CIRCUIT COURT FOR |
| *Plaintiff,* | * | BALTIMORE COUNTY |
| v. | * | CASE NO: _C-03-CV-24-004744_ |
| Center Place, LLC<br>795 Ridge Lake Boulevard<br>Suite 300<br>Memphis, TN 38120 | * | |
| | * | |
| | * | |
| Serve on:<br>CSC- Lawyers Incorp. Serv. Co.<br>7 St. Paul Street, Suite 820<br>Baltimore, MD 21202 | * | |
| | * | |
| | * | |
| AND | * | |
| Silver Tree Residential, LLC<br>202 South Minnesota Street<br>Carson City, NV 89703 | * | |
| | * | |
| Serve on:<br>CSC- Lawyers Incorp. Serv. Co.<br>7 St. Paul Street, Suite 820<br>Baltimore, MD 21202 | * | |
| | * | |
| | * | |
| *Defendants.* | | |

*    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Sharon Borowiec, by and through her undersigned counsel, Vaughn Stewart of

Santoni, Vocci & Ortega, LLC, hereby sues Defendants Center Place, LLC and Silver Tree

Residential, LLC, and for cause states:

### BACKGROUND

1.      For years, Defendants Center Place, LLC ("Center Place") and Silver Tree

Residential, LLC ("Silver Tree") have failed to provide safe and decent housing for

impoverished seniors while enriching themselves with taxpayer-funded subsidies. The U.S.

Exhibit E

Department of Housing and Urban Development—which funds Defendants' operations—calls this type of scheme a "double crime": one against both tenants and taxpayers.

2.      Defendants have created a house of horrors for the older residents who have the misfortune of living at Center Place Senior Apartments in Dundalk, Maryland. First, Defendants use deceptive tactics to lure unsuspecting seniors into the building. Then, these older Marylanders discover that Defendants allow deplorable living conditions to persist in the building. Most residents are too afraid to complain because they are vulnerable and have few, if any, other housing options. When residents do speak out, Defendants silence them using retaliation and the threat of homelessness.

3.      Defendants own and manage dozens of senior living buildings across the country, including three in Maryland. Nearly all these buildings rely on funding from the U.S. Department of Housing and Urban Development.

4.      For years, residents at Center Place Senior Apartments, and their family members, have cried out for help. In December 2023, a resident in Apartment 905 complained to Baltimore Code's code enforcement unit about a mice infestation. A similar complaint was made in June 2022 about trash that was piled up in the rear of the building and the resulting "rats running around inside and outside the building."

5.      In July 2021, a woman wrote a heartbreaking complaint to the county's code enforcement about her cousin Janie, who resided at Center Place Senior Apartments. The writer stated that her cousin, a cancer survivor, "doesn't read, write, or understand things very well" and that "[m]any of the residents have complained about the conditions of the building and their apartments." She went on to explain Defendants' climate of intimidation: "Residents have taken their complaints to the building manager of problems with the heating system and the air quality

and many other issues. The[y] are promptly dismissed by the manager and told to stop trying to

cause trouble. Janie told the manager that she was calling the health dept and the manage[r] told

her she better not because they could be shut down and then she would be homeless."

**Property Location**
_____

101 CENTER PL
DUNDALK MD 21222 *

**Application Details**
_____

**Complaint Description:**

I am Beverly Meiswinkel and I am writing to you on behalf
of my cousin Evelyn Jane Danesie. We call her Janie. Janie
has dyslexia and doesn't read, write or understand things
very well. She currently resides at the senior housing
center located at 101 Center Place Dundalk MD. Many of
the residents have complained about the conditions of
the building and their apartments. Janie is a cancer
survivor and since moving into the complex she has
developed mold growing in her throat. She is being
treated for this and was advised to purchase a air cleaning
system. She spent 600.00 of which she doesn't have to
get an air cleaning system and has to change the filter
more than normal and it goes in white and comes out
black. Residents have taken their complaints to the
building manager of problems with the heating system
and the air quality and many other issues. The are
promptly dismissed by the manager and told to stop
trying to cause trouble. Janie told the manager that she
was calling the health dept and the manage told her she
better not because they could be shut down and then she
would be homeless. The health dept was called and said
there is nothing they can do. Code enforcement was
called and the same answer given. The building is in
horrible shape and the owner/management refuse to fix
the issues and when residents complain the use the threat
of being homeless to shut them up. I would like to know
where can we get help for these residents. Thank You
Beverly Meiswinkel on behalf of Evelyn "Janie" Danesie I
can be reached via email or phone - 443-846-6704

© Copyright 2018 Baltimore County Government

6.     A month earlier, in June of 2021, a woman left a Yelp review about her mother's

situation living in Center Place Senior Apartments: My mom has lived here for 7 yrs. I wish I

could remove her[] from here but unfortunately can't afford to do that. This place treats the

seniors awful. As we speak right now they have no maintenance men because they walked off

the job. The directors that run the place also walked off the job. Trash[] has been piling up for 2

weeks, several seniors are living in apartments without AC during a historic heat wave, the[re] is

no maintenance for service calls. The last women name Sue that was running the place was

3

stealing from the elderly, going in their places and taking valuables without the[ir] permission.

The directors that walked off were taking all the food venders would bring in for the elderly for

their own families. We need to respect our elderly not place them in a building with people who

take advantage. Somebody needs to do something!"



**Sabrina A.**
West Palm Beach, FL
⌂ 0  ☐ 4  ⊠ 0

Jun 11, 2021

My mom has lived here for 7 yrs. I wish I could remove here from here but unfortunately can't afford to do that. This place treats the seniors awful. As we speak right now they have no maintenance men because they walked off the job. The directors that run the place also walked off the job. Trash's has been piling up for 2 weeks, several seniors are living in apartments without AC during a historic heat wave, their is no maintenance for service calls. The last women name Sue that was running the place was stealing from the elderly, going in their places and taking valuables without there permission. The directors that walked off were taking all the food venders would bring in for the elderly for their own families. We need to respect our elderly not place them in a building with people who take advantage. Somebody needs to do something!

♡            🖐            ♡            ☺
Helpful 0    Thanks 0    Love this 0    Oh no 0

7.     Plaintiff Sharon Borowiec, a 65-year-old retiree and Type 1 diabetic, files this

action against Defendants relating to her rental of 101 Center Place, Apt. 309, Dundalk,

Maryland 21222 (the "Apartment").

8.     Defendants misrepresented the conditions in the building when they advertised it

to Plaintiff. During a tour of the building, Defendants claimed that multiple amenities were

available to residents that were, in fact, closed most of the time. Defendants also misrepresented

the conditions and amenities on their website.

9.     When Plaintiff moved in, she realized that her Apartment and the entire building

was severely infested with rodents, which disrupted Plaintiff's use and enjoyment of the property

and caused her significant distress. Defendants knew of, or showed reckless indifference to, the

conditions of the Apartment. Defendants continued to seek rent when the Unit was uninhabitable.

10.     Plaintiff discovered other abuses, including that Defendants' employees routinely ate food donated by nonprofit groups and religious organizations that was intended for residents.

11.     When Plaintiff spoke out and tried to organize a "Resident Council" of tenants, Defendants retaliated against Plaintiff by threatening to kick her out.

12.     Defendants committed elder abuse, breached the warranty of habitability, were negligent, allowed a nuisance, committed fraud and deceit, and perpetuated numerous debt collection and consumer protection violations.

## PARTIES

13.     Plaintiff Sharon Borowiec is a resident of Baltimore County, Maryland and has resided at 101 Center Place, Apt. 309, Dundalk, Maryland 21222 at all times relevant to this action.

14.     Defendant Center Place, LLC is a Delaware limited liability company headquartered in Tennessee that owns the property.

15.     Defendant Silver Tree Residential, LLC is a Nevada limited liability company that serves as the property management company for the building.

## JURISDICTION AND VENUE

16.     Jurisdiction may properly be exercised by this Court over Defendants pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103. Defendants transact or transacted business in Maryland, caused tortious injury in Maryland, and Center Place owns property in Maryland.

17.     Venue in this District is proper pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 6-201 and 6-202. Defendants carry on or carried on regular business within Baltimore County and the cause of action arose in Baltimore County.

## FACTUAL ALLEGATIONS

18.     On or about December 17, 2021, Plaintiff entered a lease agreement with Defendants for the rental of the Apartment commencing in December 2021 and ending on November 30, 2022.  Her lease agreement provided for automatic renewal unless it was terminated. Ms. Emeka Campbell, Defendants' Assistant Community Director, signed the lease on behalf of "Landlord."

19.     Ms. Borowiec lives in a federally subsidized unit and currently pays $355 in monthly rent under the current Lease agreement.

20.     In the lease agreement, Defendants promised to "make necessary repairs with reasonable promptness" and "provide extermination services, as necessary."

21.     In December 2021, roughly a week before the lease signing, the same Emeka Campbell provided Plaintiff with a tour of the building. On that tour, Defendants highlighted a kitchen, community room, a laundry room, common-area bathrooms, and a library on the first floor of the building.

22.     Defendants also advertise these amenities on their website, where they claim that residents will "want to head over to our community room" and that the building "offers all its residents excellent accommodations, a professional on site staff available 24 hours a day, 24 hour maintenance response and a great place to call home." In reality, on-site staff is not available at all hours of the day, maintenance response is not available at all hours of the day, and Center

Place Senior Apartments is not a great place to call home. The accommodations are far from excellent—they are nightmarish.



      23.     Upon moving into the building in January 2022, Plaintiff discovered that most of these promised amenities were closed to residents, at least outside of planned events. The laundry room was only available on weekdays when staff members were present. Even the first-floor bathrooms were not made available to residents or their guests.

24.     Plaintiff moved into the Apartment in January of 2022, which is when she discovered that Defendants misrepresented the conditions of her unit and of the building itself. Plaintiff caught five mice in her first three months of living in the Apartment. Her Apartment was riddled with holes upon move-in.

25.     Plaintiff contacted property management staff numerous times over the course of a two-year period, but the extermination efforts proved unsuccessful at remedying the infestation.

26.     Defendants' Community Director Shay Dorsey responded to Plaintiff's initial complaints by suggesting that Plaintiff's dog might be the cause of the infestation in the Apartment. At that time, Ms. Dorsey and other property management staff knew or should have known that many units in the building were infested with rodents.

27.     In 2022, the Terminix exterminator who treated the Apartment told Plaintiff that his extermination efforts (namely, mouse traps) would not work unless Defendants were willing to seal all the holes in the Apartment. Otherwise, the rodents would continue invading the Apartment. The exterminator told Plaintiff that he communicated this reality to Defendants, but Defendants took no action to fill the holes. The infestation only worsened.



28.    Around September 2022, Terminix technician William Davis performed a "regular weekly service inspection." He concluded that Plaintiff's Apartment "needs maintenance" because "the base board behind the refrigerator has been chewed up and needs replacing." Mr. Davis noted in his report that he discovered a rodent infestation in several other units of the building as well.

29.    Beginning in 2022, Plaintiff's brother Joseph Doss assisted Plaintiff with drafting email complaints to Defendants. In 2023, after Defendants failed to respond to multiple emails from Plaintiff about the infestation, Mr. Doss began to email Defendants himself about the problems that Plaintiff was experiencing. Over the course of 2022, 2023, and 2024, Plaintiff and her brother emailed Defendants numerous times to notify them of the waves of rodents in the Apartment.

30.    Plaintiff's furniture, clothing, shoes, sentimental items, and food were destroyed by the rodent infestation over the course of two years.

31.    Plaintiff was horrified to discover baby mice living in her shoes and furniture.



32.     In 2024, Plaintiff and her brother escalated the issue to Defendant Silver Tree's corporate office. After more than two years of requests, the corporate office finally directed the building's management staff to seal the holes in Plaintiff's Apartment.

33.     In 2024, Plaintiff attempted to create a Resident's Council to provide her neighbors with a forum to organize. She distributed fliers to other residents and attempted to schedule a meeting of concerned residents. Defendants blocked her efforts. Defendants sent Plaintiff a formal letter indicating that she had violated her lease by distributing fliers.

34.     Plaintiff has acted reasonably at all times and was not the cause of the rodent infestation in the Apartment.

35.     As a result of Defendants' actions and inactions, Plaintiff has suffered monetary damages, including but not limited to, rental payments and other economic damages. Plaintiff

has suffered from emotional distress with physical manifestations, fear, anxiety, sleeplessness, embarrassment, inconvenience, aggravation, and frustration.

**COUNT I – NEGLIGENCE**
**(Against all Defendants)**

36.    Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

37.    There was a duty on the part of Defendants, who rented the Apartment to Plaintiff and accepted rental payments from her, to provide her with a living space free of conditions materially affecting the life, health, and safety of ordinary persons.

38.    There was a duty on the part of Defendants, who rented the Apartment to Plaintiff and accepted rental payments from her, to address and rectify known issues within the Apartment.

39.    There was a duty on the part of Defendants, who rented the Apartment to Plaintiff and accepted rental payments from her, to provide her with a residence free from rodents.

40.    Plaintiff notified Defendants about the rodent infestations in the Apartment.

41.    Defendants knew or should have known of the rodent infestation but failed to take prompt action to correct these issues properly.

42.    Defendants breached their duties to Plaintiff by failing to provide a living space free of conditions materially affecting the life, health, and safety of ordinary persons.

43.    Defendants breached their duties to Plaintiff by failing to provide a safe, healthy, and habitable home and one that complied with applicable codes and regulations.

44.    As a result of Defendants' breach of their duties, Ms. Borowiec has suffered monetary damages, including but not limited to, rental payments and other economic damages.

Plaintiff has suffered from emotional distress with physical manifestations, fear, anxiety, sleeplessness, embarrassment, inconvenience, aggravation and frustration.

WHEREFORE, Plaintiff demands damages in excess of $75,000.00 against Defendants, jointly and severally, plus costs and fees and other relief as justice demands.

## COUNT II – BREACH OF THE WARRANTY OF HABITABILITY
### (Against all Defendants)

45.    Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

46.    Defendants, who rented the Apartment to Plaintiff and accepted rental payments from Ms. Sharon Borowiec, warranted a habitable environment for Plaintiff to live.

47.    Defendants provided an unsafe and unhealthy environment to Plaintiff by way of the rodent infestation in the Apartment.

48.    Given the numerous health, safety, and livability issues in the Apartment described above, Defendants breached the warranty of habitability.

49.    As a result of Defendants' breach of the warranty of habitability, Ms. Borowiec has suffered monetary damages, including but not limited to, rental payments and other economic damages. Plaintiff has suffered from emotional distress with physical manifestations, fear, anxiety, sleeplessness, embarrassment, inconvenience, aggravation and frustration.

WHEREFORE, Plaintiff demands damages in excess of $75,000.00 against Defendants, jointly and severally, plus costs and fees and other relief as justice demands.

## COUNT III – BREACH OF CONTRACT
### (Against all Defendants)

50.    Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

12

51.    On or about December 17, 2021, Plaintiff entered into a Lease with Defendants for the rental of the Apartment.

52.    The Lease stated that the owner would maintain the premises and the apartment.

53.    The Lease stated that the owner shall be responsible for repairs to the Apartment.

54.    Plaintiff notified Defendants of the rodent infestation in the Apartment.

55.    Defendants breached the Lease by not repairing and remedying the rodent infestation, which constituted a threat to the life, health, and safety of Plaintiff.

56.    As a sole, direct and proximate result of Defendants' negligence, Plaintiff has suffered monetary damages, including but not limited to, rental payments and other economic damages. Plaintiff has suffered from emotional distress with physical manifestations, fear, anxiety, sleeplessness, embarrassment, inconvenience, aggravation and frustration.

WHEREFORE, Plaintiff demands damages in excess of $75,000.00 against Defendants, jointly and severally, plus costs and fees and other relief as justice demands.

### COUNT IV – NUISANCE
**(Against all Defendants)**

57.    Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

58.    The infiltration of rodents constituted a nuisance in the Apartment.

59.    Defendants had notice of the nuisance as Ms. Borowiec reported the nuisance. Defendants had actual knowledge of these defects because Ms. Borowiec told them and they could see the defects for themselves. Defendants knew of the foreseeable harm to Plaintiff, as repeated infiltration of rodents presents dangerous health hazards.

60. Defendants did not properly exterminate the rodent infestation. Defendants have consciously and deliberately disregarded the foreseeable harm to Plaintiff. They have shown flagrant indifference.

61. Defendants did not fix the nuisance in the Apartment.

62. The infiltration of rodents, and the Defendants' failure to remedy and resolve these issues was unreasonable, intentional, and malicious. Defendants are directly responsible for maintenance and repair of the conditions of which Plaintiff complained. Defendants knew of the problems, and they could have properly fixed the problems, but instead consciously and deliberately chose to do the bare minimum, and did not solve these dangerous health hazards.

63. The infiltration of rodents caused substantial and unreasonable interference with Plaintiff's use and enjoyment of the Apartment.

64. The infiltration of rodents was so substantially unreasonable that Plaintiff suffered a diminution in the use of the Apartment.

65. Defendants' conduct was unreasonable and imposed immediate, substantial, and irreparable injury upon Plaintiff.

66. As a result, Plaintiff has suffered monetary damages, including but not limited to, rental payments and other economic damages. Plaintiff has suffered from emotional distress with physical manifestations, fear, anxiety, sleeplessness, embarrassment, inconvenience, aggravation and frustration.

WHEREFORE, Plaintiff demands damages in excess of $75,000.00 against Defendants, jointly and severally, including punitive damages as appropriate, plus costs and fees and other relief as justice demands.

### COUNT V – FRAUD AND DECEIT
**(Against all Defendants)**

14

67.     Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

68.     Implicit in the advertisement and rental of a leased dwelling is the assurance that the rental property is fit for human habitation. The landlord is presumed to know the law regarding housing code standards.

69.     The ongoing existence of a rodent infestation violates Baltimore County's Housing Code and constitutes a material fact that tenants would deem important in determining whether to enter into a lease and/or to continue to make payments under an existing lease.

70.     Defendants knew that their property was infested with rodents. Defendants owed a duty to Plaintiff to disclose the material fact that despite their legal obligation to provide a safe and healthy environment, Defendants allowed a rodent infestation to persist.

71.     Defendants' failure to disclose the rodent infestation in many units of the building and their unwillingness to invest in remediation constitutes a willful, false misrepresentation of material fact regarding the status of the building made as an inducement to Plaintiff to enter into a lease agreement and/or to renew an existing lease and to continue to pay monthly rent while the Apartment was in a state of disrepair. These misrepresentations were undertaken with actual knowledge that they were false, and they were made with the intent to deceive Plaintiff. Defendants' actual knowledge that their misrepresentations were false, coupled with Defendants' intent to deceive Plaintiffs by means of those misrepresentations, constitute actual malice.

72.     Defendants' failure to disclose the extent of the rodent infestation in Center Place Senior Apartments was motivated by an intent to defraud and deceive Plaintiff into executing a lease with Defendants and/or renewing an existing lease and continuing to make monthly rental payments.

73.    In executing a lease with Defendants and/or renewing an existing lease and continuing to pay monthly rent to Defendant, Plaintiff justifiably relied on Defendants' concealment. Upon signing her lease, Plaintiff believed Defendants' representations that they provided "excellent accommodations" free of rodents. She believed their representations about the availability of amenities, including when she received a tour of the building by Defendants' Assistant Community Director Emeka Campbell. Later, when Defendants accused Plaintiff of causing the rodent infestation, she did not realize the extent of their omissions regarding their unwillingness to remedy a building-wide rodent infestation. She justifiably relied on Defendants' representations that they intended to remedy the problem.

74.    Defendants knew the building was infested with rodents and locked up amenities that they advertised to guests. They did not disclose these material facts to Plaintiff. Instead, Defendants intended to deceive Plaintiff by collecting and attempting to collect rent. Accordingly, Plaintiff is entitled to punitive damages, which are recoverable in an action for Fraud and Deceit upon a showing of actual malice.

75.    Plaintiff has suffered monetary damages, including but not limited to, rental payments and other economic damages. Plaintiff has suffered from emotional distress with physical manifestations, fear, anxiety, sleeplessness, embarrassment, inconvenience, aggravation and frustration.

WHEREFORE, Plaintiff demands damages in excess of $75,000.00 against Defendants, jointly and severally, including punitive damages as appropriate, plus costs and fees and other relief as justice demands.

**COUNT VI – VIOLATION OF THE MARYLAND SAFE ACT**
**Md. Code Ann., Est. & Trusts § 13-601, *et seq.***
**(Against all Defendants)**

16

76.    Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

77.    The Mayland Stop Adult Financial Exploitation (SAFE) Act, Md. Code Ann., Est. & Trusts § 13-601, et seq., constitutes remedial legislation that must be "construed and applied liberally to promote its purpose of deterring and remedying the financial exploitation of susceptible adults and older adults." Md. Code Ann., Est. & Trusts § 13-608.

78.    As "persons" under the SAFE Act, Defendants are prohibited from committing financial exploitation against susceptible adults and older adults.

79.    At all times relevant to this Complaint, Plaintiff was a "susceptible adult," as she was "unable to protect [her] rights" due to "advanced age." Md. Code Ann., Est. & Trusts § 13-601(k)(1). Over the course of two years, Plaintiff was unable to protect her right to safe and healthy housing due to her advanced age. Because of age-related limitations, Plaintiff relied on her brother to both write email messages for her and to send email messages directly to Defendants using his own email address. In addition, Plaintiff was a susceptible adult because she was dependent on a low-income senior building for her housing. As Defendants liked to remind her, Plaintiff—a senior on a fixed income—had nowhere else to go. She couldn't protect her rights by moving. She was therefore susceptible to Defendants' exploitation and deceit.

80.    The SAFE Act prohibits Defendants from financially exploiting older and susceptible adults in two ways relevant to the instant case.

81.    First, financial exploitation means an act taken by a person who "[s]tands in a position of trust and confidence with a susceptible adult or older adult and who knowingly obtains or uses, or endeavors to obtain or use, a susceptible adult's or older adult's funds, assets, or property with the intent to temporarily or permanently deprive the susceptible adult or older adult

of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the susceptible adult or older adult, in such a manner that is not fair and reasonable." Md. Code Ann., Est. & Trusts § 13-601(e)(i).

82.     Defendants stood in a position of trust and confidence because they had a relationship with Plaintiff, "formed by a formal . . . [lease] agreement," in which Defendants were "entrusted with the use or management of the property . . . of the susceptible adult [and] the susceptible adult's . . . care" and in which there was "a special confidence or trust placed in [Defendants] who, in equity and good conscience, [were] bound to act in good faith and with due regard to the interests of the susceptible adult." Pursuant to both the lease agreement and Maryland statutes, Defendants were entrusted with the care of Plaintiff's property—including her clothing and furniture destroyed by rodents—and were required to act in good faith toward Plaintiff.

83.     Defendants knowingly obtained rent payments from Plaintiff with the intent to permanently deprive Plaintiff of those funds for their own benefit. Defendants' rent collection was neither fair nor reasonable because they failed to maintain a healthy environment for Plaintiff despite repeated cries for help over the course of more than two years.

84.     Second, financial exploitation means an act taken by a person who "[b]y deception, false pretenses, false promises, larceny, embezzlement, misapplication, conversion, intimidation, coercion, isolation, excessive persuasion, or similar actions and tactics, obtains or uses, or endeavors to obtain or use, a susceptible adult's or older adult's funds, assets, or property with the intent to temporarily or permanently deprive the susceptible adult or older adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the susceptible adult or older adult." Md. Code Ann., Est. & Trusts § 13-601(e)(ii).

85.     Defendants used deception, false pretenses, intimidation, coercion, and similar tactics to obtain rent payments from Plaintiff with the intent to permanently deprive Plaintiff of those funds for their own benefit. Defendants deceived Plaintiff about the condition of the Apartment and the building. Defendants deceived Plaintiff about the availability of amenities. Defendants used intimidation and coercion by threatening Plaintiff with eviction after she attempted to exercise her right to create a tenant's organization.

86.     Plaintiff would not have rented the Apartment had she known of the rodent infestation.

87.     Defendants' actions, representations, misrepresentations, violations, and intimidation have caused damages to Plaintiff. Plaintiff suffered economic damages, including payment of rent while the Apartment was uninhabitable. Plaintiff suffered from anxiety, inconvenience, aggravation, frustration, physical injuries, and emotional distress with physical manifestations, including loss of sleep, due to the actions and inactions of Defendants.

88.     The Maryland SAFE Act allows susceptible and older adults to recover compensatory damages, reasonable attorney's fees, and treble damages, all of which Plaintiff seeks and is entitled to. Md. Code Ann., Est. & Trusts § 13-606(c).

WHEREFORE, Plaintiff demands damages in excess of $75,000.00 against Defendants, jointly and severally, including treble damages as appropriate, plus costs and attorney's fees and other relief as justice demands.

## COUNT VII – VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT
**Md. Code Ann., Com. Law § 13-101, *et. seq.***
**(Against all Defendants)**

89.     Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

90.     Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Com. Law § 13-101, et seq., constitutes remedial legislation that is intended to be construed liberally in order to promote its purpose of providing a modicum of protection for the State's consumers. *Wash. Home Remodelers, Inc. v. State, Office of Attorney Gen., Consumer Prot. Div.*, 426 Md. 613, 630 (2012).

91.     As "persons" under the CPA, Md. Code Ann., Com. Law § 13-101(h), Defendants are prohibited from engaging in unfair and deceptive trade practices.

92.     At all times relevant to this Complaint, Plaintiff was a consumer, as she rented the Apartment pursuant to a residential lease.

93.     The CPA specifically prohibits Defendants from making false statements which have the capacity of deceiving or misleading consumers and failing to state a material fact if the failure deceives or tends to deceive. Md. Code Ann., Com. Law §§ 13-301(1) and (3).

94.     Defendants knew or should have known that the Apartment was infested with rodents when they moved Plaintiff into the Apartment.

95.     Defendants did not inform Plaintiff of the material facts concerning the rodent infestation in the Apartment.

96.     Defendants did not inform Plaintiff about the unavailability of common areas and amenities during certain hours of the week.

97.     Defendants intended that Plaintiff rely on Defendants' misrepresentations and concealment, suppression, or omission of the material facts regarding the rodents in the Apartment and the amenities.

98.     Plaintiff would not have rented the Apartment had she known of the rodent infestation or the lack of amenities.

99.    Because the material facts were withheld, Plaintiff was deceived about the actual condition of the premises, and was damaged as a result.

100.    In violation of the CPA, Md. Code Ann., Com. Law §§ 13-301(1), (2), and (3) and 13-303(1) and (2), Defendants failed to state material facts and knowingly concealed, suppressed, or omitted material information regarding the rodents in the Apartment with the intent that Plaintiff rely on same.

101.    In addition, a violation of Maryland's Consumer Debt Collection statute is an automatic violation of Maryland's Consumer Protection Act, and the Debt Collection statute was violated as set forth below.

102.    Defendants' representations and misrepresentations and violations have caused damages to Plaintiff. Plaintiff suffered economic damages, including payment of rent while the Apartment was uninhabitable. Plaintiff suffered from anxiety, inconvenience, aggravation, frustration, physical injuries, and emotional distress with physical manifestations, including loss of sleep, due to the actions and inactions of Defendants.

WHEREFORE, Plaintiff demands damages in excess of $75,000.00 against Defendants, jointly and severally, plus costs and attorneys' fees and other relief as justice demands.

## COUNT VIII – VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT
### Md. Code Ann., Com. Law § 14-201 *et. seq.*
### (Against all Defendants)

103.    Plaintiff re-alleges and incorporates by reference the allegations set forth above, and further alleges:

104.    Defendants are "collectors" under Md. Code Ann., Com. Law § 14-201(b) as they collected or attempted to collect an alleged debt arising out of a consumer transaction, namely a personal, residential lease transaction.

21

105.    By charging rent, and fees in connection with an alleged debt arising out of the Lease, Defendants were "collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code Ann., Com. Law § 14-201(b).

106.    The transaction between Plaintiff and Defendants concerned "real or personal property, services, money, or credit for personal, family, or household purposes." Md. Code Ann., Com. Law § 14-201(c).

107.    Defendants' actions in seeking, collecting and retaining rental payments not owed were violations of Md. Code Ann., Com. Law § 14-202(8) which prohibits a collector from making any "[c]laim, attempt, or threat[] to enforce a right with knowledge that the right does not exist."

108.    The Maryland Consumer Debt Collection Act also provides that a collector may not engage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act ("FDCPA"). Md. Code Ann., Com. Law § 14-202(11).

109.    The FDCPA prohibits false representations of the character, amount, or legal status of any debt (15 U.S.C § 1692e(2)(A)) [FDCPA § 807]; false representations or deceptive means to collect any debt (15 U.S.C § 1692e(10)) [FDCPA § 807]; and unfair or unconscionable means to collect or attempt to collect any debt unless such amount is permitted by law (15 U.S.C § 1692f(1)) [FDCPA § 808].

110.    Defendants violated Md. Code Ann., Com. Law § 14-202(11) by falsely representing the legal status of rent owed. Defendants collected rent from Plaintiff despite failing to provide a safe and healthy environment.

111.    A collector who violates any provision of the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201 et seq. is liable for any damages proximately caused by

the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

112.    As a result of Defendants' violations of the Maryland Consumer Debt Collection Act, Plaintiff suffered economic damages and emotional distress and mental anguish with physical manifestations.

WHEREFORE, Plaintiff demands in excess of $75,000.00 in damages against Defendants, jointly and severally, plus costs and attorney's fees and such other and further relief as the nature of Plaintiff's cause may require.

/s/ Vaughn Stewart
Vaughn Stewart, CFPF No.: 2305040018
Santoni, Vocci & Ortega, LLC
201 W. Padonia Road, Suite 101A
Lutherville-Timonium, Maryland 21093
Phone: 443-921-8161
Fax: 410-525-5704
vstewart@svolaw.com
Attorney for Plaintiff

## CLAIM FOR ATTORNEY'S FEES

Plaintiff reiterates that, as stated in the individual counts for relief, she intends to seek attorneys' fees pursuant to Maryland Rule 2-701, et seq., and these fees may be substantial as litigation continues.

/s/ Vaughn Stewart
Vaughn Stewart, CFPF No.: 2305040018

23

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on each issue so triable.

/s/ Vaughn Stewart
Vaughn Stewart, CFPF No.: 2305040018
Santoni, Vocci & Ortega, LLC
201 W. Padonia Road, Suite 101A
Lutherville-Timonium, Maryland 21093
Phone: 443-921-8161
Fax: 410-525-5704
vstewart@svolaw.com
*Attorney for Plaintiff*